## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| INNOVATIVE COMMUNICATION | ) | Bankruptcy No. 3:07-30012 |
| CORPORATION, | ) | |
| | ) | Adv. No. 3:09-03075 |
| Debtor. | ) | |
| —————————————————— | ) | |
| | ) | |
| JAMES P. CARROLL, | ) | |
| LIQUIDATION TRUSTEE OF THE | ) | |
| LIQUIDATION TRUST FOR THE | ) | |
| BANKRUPTCY ESTATES OF | ) | |
| INNOVATIVE COMMUNICATION | ) | |
| COMPANY, LLC, EMERGING | ) | Civil No. 2013-25 |
| COMMUNICATIONS, INC., AND | ) | |
| INNOVATIVE COMMUNICATION | ) | |
| CORPORATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMJ, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

ATTORNEYS:

**Benjamin A. Currence, Esq.**
Law Offices of Benjamin A. Currence
St. Thomas, VI
    *For James P. Carroll, Liquidation Trustee.*

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 2

## MEMORANDUM OPINION AND ORDER

**GÓMEZ, J.**

Before the Court is the amended motion of AMJ, Inc. ("AMJ") to withdraw the reference[1] to this Court's Bankruptcy Division ("Bankruptcy Division") in Adversary No. 2009-3075.

### I.   FACTUAL AND PROCEDURAL HISTORY

This appeal arises out of the lengthy, and ongoing, bankruptcy of Innovative Communication Corporation ("ICC"), a Virgin Islands telecommunications company, and its former owner

---

[1] Under certain circumstances, a district court may "withdraw the reference"—that is, it may take a proceeding away from the bankruptcy court and decide the matter itself. 28 U.S.C. § 157(d) (West 2013).

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). Title 28 U.S.C. § 157(d) does not define what constitutes a "timely" motion of any party. In interpreting the statute, this Court has looked to Local Rule of Bankruptcy Procedure 9015-1 to determine whether a party's motion to withdraw is timely. *In re Innovative Commc'n Corp.*, CIV. 2008-76, 2008 WL 3926361 (D.V.I. Aug. 21, 2008) (denying motion to withdraw the reference when it was untimely filed under Local Rule of Bankruptcy Procedure 9015-1). The Local Rules were amended effective March 8, 2013. At the time of Defendant's answer, the 2007 Local Rule was in effect. Under either rule, a motion to withdraw must be filed within 30 days of the jury demand. Local Rule of Bankruptcy Procedure 9015-1.

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 3

and chief executive officer, Jeffrey Prosser. On September 19,

2009, Stan Springel, the Chapter 11 Trustee of the Bankruptcy

Estate of ICC ("Springel"), filed a complaint in the Bankruptcy

Division to recover pre-petition fraudulent transfers and

preferential transfers.

Springel filed an amended complaint on August 9, 2012. On

October 1, 2012, AMJ filed an answer containing a request for

jury trial. Subsequently, James P. Carroll ("Carroll") was

appointed as Liquidation Trustee, and Carroll was substituted

for Springel as plaintiff.

On March 15, 2013, AMJ filed the instant motion to withdraw

the reference to the Bankruptcy Division. Carroll has opposed.

## II.  DISCUSSION

The Seventh Amendment guarantees the right to trial by jury

for certain civil law suits "at common law."[2] U.S. Const., amend

VII. A request for a jury trial must be timely.[3] Fed. R. Civ. P.

---

[2] The United States Supreme Court has "consistently interpreted
the phrase 'suits at common law' to refer to suits in which
*legal* rights were to be ascertained and determined, in
contradistinction to those where equitable rights alone were
recognized, and equitable remedies were administered."
*Granfinanciera, S.A., et al. v. Nordberg*, 492 U.S. 33, 41
(1989), *quoting Parsons* v. *Bedford*, 3 Pet. 433, 447 (1830)
(emphasis in original).
[3] It is axiomatic that a litigant may raise a lack of subject
matter jurisdiction at any time. *Kontrick v. Ryan*, 540 U.S. 443,
455, 124 S. Ct. 906, 915, 157 L. Ed. 2d 867 (2004). However, the
allocation of authority to enter a final judgment between the

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 4

38 ("Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue, and filing the demand as required by Rule 5(d).... The failure of a party to serve and file a demand as required by this rule constitutes a waiver by the party of trial by jury...."); Fed. R. Civ. P. 39 ("Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues."). When determining whether to grant an untimely jury demand, courts consider several factors:

> 1) whether the issues are suitable for a jury; 2) whether granting the motion would disrupt the schedule of the Court or the adverse party; 3) whether any prejudice would result to the adverse party; 4) how long the party delayed in bringing the motion; and 5) the reasons for the failure to file a timely demand.

---

bankruptcy court and the district court "does not implicate questions of subject matter jurisdiction." *Stern v. Marshall*, 131 S. Ct. 2594, 2607, (2011) *reh'g denied*, 132 S. Ct. 56, 180 L. Ed. 2d 924 (U.S. 2011)

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 5

*U.S. S.E.C. v. Infinity Grp. Co.*, 212 F.3d 180, 195-96 (3d Cir. 2000).

### III. <u>ANALYSIS</u>

"The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved." *Stern v. Marshall*, 131 S. Ct. 2594, 2603 (2011). Bankruptcy judges have the statutory authority to hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." *Id.* at 2596. However, bankruptcy judges lack the constitutional authority to hear and enter final judgments on matters unless they implicate "public rights." *Id.* at 2614 ("'[i]f a statutory right is not closely intertwined with a federal regulatory program Congress has power to enact, and if that right neither belongs to nor exists against the Federal Government, then it must be adjudicated by an Article III court.'") (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 54-55 (1989)).

In *Stern v. Marshall*, a counterclaim for tortious interference—though a core claim—could not be decided by a bankruptcy judge because it "does not fall within any of the varied formulations of the public rights exception in this Court's cases." *Stern v. Marshall*, 131 S. Ct. 2594, 2614 (2011) (analogizing to the fraudulent conveyance claim in

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 6

*Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33 (1989), which also did not fall within the public rights exception and therefore could not be decided by a bankruptcy judge). A tortious interference counterclaim "involves the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." *Stern*, 131 S. Ct. at 2615 (emphasis in original). The *Stern* Court explained that the question before it was "a 'narrow' one," and that the removal of counterclaims like Marshall's would not "meaningfully change[] the division of labor in the current statute [18 U.S.C. § 157]." *Stern*, 131 S. Ct. at 2620.

Unlike the state law counterclaim at issue in *Stern v. Marshall* listed in 18 U.S.C. § 157(b)(2)(C), the present action involves actions enumerated in different portions of the code: 18 U.S.C. § 157(b)(2)(F) and (H). *Id.* The Court must determine whether the fraudulent conveyance and preference actions are core proceedings. If so, the Court must then determine whether fraudulent conveyance and preference actions involve public rights such that they may be constitutionally adjudicated in bankruptcy courts.

### i. Statutory Jurisdiction

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 7

As previously stated, bankruptcy judges may hear and enter final judgments in "all core proceedings arising under title 11, or arising in a case under title 11." 28 U.S.C. § 157(b)(1). Pursuant to Section 157(b)(2), "core" proceedings include "proceedings to determine, avoid, or recover preferences" and "proceedings to determine, avoid, or recover fraudulent conveyances." *Id*. at § 157(b)(2)(F), (H). Thus, as a general matter, preferential transfer and fraudulent conveyance actions are core proceedings and bankruptcy courts may statutorily enter final judgments in such actions. *See generally Stern*, 131 S. Ct. at 2604-5 (explaining that § 157(b) "permits the bankruptcy court to enter a final judgment" in a proceeding listed under § 157(b)(2) as "core.").

AMJ does not challenge the statutory authority of bankruptcy courts to enter judgment in such actions. Rather, AMJ argues that bankruptcy courts are devoid of the *constitutional* capacity to enter final judgments in preferential transfer and fraudulent conveyance actions.

## ii. Constitutional Jurisdiction

Having determined that the bankruptcy court is statutorily authorized to enter final judgments in fraudulent conveyance and preference actions, the Court must next determine whether

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 8

Article III permits Congress to delegate such jurisdiction to bankruptcy courts.

"[I]n general, Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" *Stern*, 131 S. Ct. at 2609 (quoting *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272 (1856)). "When a suit is made of 'the stuff of the traditional actions at common law . . . ' and is brought within the bounds of federal jurisdiction, the responsibility for deciding that suit rests with Article III judges in Article III courts." *Stern*, 131 S. Ct. at 2609 (quoting *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (Rehnquist, J., concurring in judgment)). "At the same time, there are matters, involving public rights, which may be presented in such form that the judicial power is capable of action on them, and which are susceptible of judicial determination, but which [C]ongress may or may not bring within the cognizance of the courts of the United States, as it may deem proper." *Murray's Lessee*, 59 U.S. 272, 284 (1855).

A matter may involve public rights if it "flow[s] from a federal statutory scheme" or is "completely dependent upon adjudication of a claim created by federal law." *Stern*, 131 S. Ct. at 2614 (internal quotation marks omitted). The issue here

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 9

is whether fraudulent conveyance and preference actions involve

public rights such that they may be constitutionally adjudicated

in bankruptcy courts.

Prior to its *Stern* decision, the Supreme Court, in

*Granfinanciera, S.A. v. Nordberg*, 109 S. Ct. 2782 (1989) had

occasion to address that very issue. Indeed, the *Granfinanciera*

court explained that

> There can be little doubt that fraudulent conveyance
> actions by bankruptcy trustees-suits which, we said in
> *Schoenthal v. Irving Trust Co.*, 287 U.S., at 94-95, 53
> S.Ct., at 51 (citation omitted), "constitute no part
> of the proceedings in bankruptcy but concern
> controversies arising out of it" - are
> quintessentially suits at common law that more nearly
> resemble state - law contract claims brought by a
> bankrupt corporation to augment the bankruptcy estate
> than they do creditors' hierarchically ordered claims
> to a pro rata share of the bankruptcy res. *See Gibson*
> 1022-1025. They therefore appear matters of private
> rather than public right.

*Granfinanciera*, 109 S. Ct. at 2798.

Subsequently, the U.S. Court of Appeals for the Ninth

Circuit, in *In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553

(9th Cir. 2012), relied on the *Granfinanciera* and *Stern*

decisions in holding that the bankruptcy courts are without

constitutional authority to enter final judgment in fraudulent

conveyance actions.[4] In *Bellingham*, the bankruptcy trustee filed

_____

[4] The Sixth Circuit has discussed the issue in dicta, stating that

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 10

a fraudulent transfer complaint to recover commissions deposited into the account of a non-creditor as property of the Chapter 7 estate. The bankruptcy court granted summary judgment in favor of the trustee. The non-creditor appealed. The district court affirmed. The non-creditor appealed once again.

On review, the appellate court explained that "*Granfinanciera* clarified that fraudulent conveyance actions are not matters of public right, and that a noncreditor retains a Seventh Amendment right to a jury trial on a bankruptcy trustee's fraudulent conveyance claim." *Bellingham*, 702 F.3d at 562. The Ninth Circuit concluded that "[t]aken together, *Granfinanciera* and *Stern* settle the question of whether bankruptcy courts have the general authority to enter final

---

Next came *Granfinanciera, S.A. v. Nordberg*, which held that the public-rights doctrine does not allow a bankruptcy court to decide a fraudulent-conveyance claim filed by a bankrupt estate's trustee against a non-creditor. 492 U.S. 33, 55 (1989). By means of such a claim, the estate seeks to recover property that the debtor transferred in anticipation of bankruptcy. Fraudulent-conveyance claims, *Granfinanciera* said, "constitute no part of the proceedings in bankruptcy." *Id*. at 56. They are "quintessentially suits at common law that more nearly resemble state-law contract claims . . . to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res." *Id*. Thus, only an Article III court can enter final judgment on such a claim. (*Granfinanciera* actually involved the limits of the bankruptcy court's equity jurisdiction for Seventh Amendment purposes, not the limits of the bankruptcy court's authority for purposes of Article III. But the Supreme Court stated that the analysis for each is the same. *See id*. at 53–54.)

*Waldman v. Stone*, 698 F. 3d 910, 918-19 (6th Cir. 2012).

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 11

judgments on fraudulent conveyance claims asserted against

noncreditors to the bankruptcy estate. They do not." *Bellingham*,

702 F.3d at 565. The Court further articulated that

> . . . Article III bars bankruptcy courts from entering
> final judgments in such actions brought by a
> noncreditor absent the parties' consent.

*Bellingham*, 702 F.3d at 572.

The *Bellingham* court then turned to the question of

"whether bankruptcy judges may constitutionally hear such

claims, and prepare recommendations for de novo review by the

federal district courts." *Id*. Relying again on the holding in

*Stern*, the *Bellingham* Court concluded that "bankruptcy courts

have statutory authority to hear and enter proposed findings of

fact and conclusions of law in a fraudulent conveyance

proceeding asserted by a bankruptcy trustee against a

noncreditor, subject to de novo review by a federal district

court." *Id*. at 566.

Here, the complaint in the Adversary Proceeding seeks to

recover pre-petition fraudulent and preferential transfers. Such

claims are governed by the rule laid out in *Granfinanciera* and

clarified in *Bellingham*. They may be finally adjudicated only by

the district court, absent waiver or consent of the parties.

There has been no such waiver here.

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 12

Although the bankruptcy judge may not *finally* determine
such matters as are presented here, a bankruptcy judge may
address pre-trial matters until such time as the matter is ready
for trial. *See, e.g.*, *In re Palm Beach Finance Partners, L.P.*,
2013 WL 2036161 at *2 (S.D. Fla. May 14, 2013) (holding that, in
a fraudulent conveyance action, "while the Court finds that
withdrawal of the reference is appropriate for purposes of
conducting the jury trial, at this point in the proceedings, the
withdrawal would be premature."); *In re Big V Holding Corp.*,
2002 WL 1482392 (D. Del. July 11, 2002) ("Withdrawal of the
reference based on the ground that a party is entitled to a jury
trial should be deferred until the case is 'trial ready.'")
(citations omitted). Accordingly, the reference will not be
withdrawn until such time as the bankruptcy judge determines
that this matter is trial ready.

*Carroll v. AMJ, Inc.*
Civil No. 2013-25
Memorandum Opinion and Order
Page 13

The premises considered, it is hereby

 **ORDERED** that AMJ's motion to withdraw the reference to the

Bankruptcy Division is **DENIED WITHOUT PREJUDICE**; it is further

 **ORDERED** that the Bankruptcy Judge shall address all

pretrial matters; it is further

 **ORDERED** that the Bankruptcy Judge shall certify the

underlying proceeding as "trial-ready" when appropriate; and it

is further

 **ORDERED** that the Clerk of the Court shall **CLOSE** this case.


      S\ _____

       **Curtis V. Gómez**
       **District Judge**